* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Homick with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and the subject matter of this case. *Page 2 
2. An employer/employee relationship existed between the employer and employee at all relevant times in this claim.
3. The parties were subject to the North Carolina Workers' Compensation Act at all times relevant to this proceeding, the employer employing the requisite number of employees to be bound under provisions of said Act.
4. The alleged date of injury is December 26, 2007.
5. Plaintiff has received disability benefits in the amount of $200.00 bi-weekly since approximately April 15, 2008.
6. Plaintiff's average weekly wage is $401.80, yielding a compensation rate of $268.00 per week.
7. The following stipulated exhibits were entered into evidence:
 • Exhibit 1: Pre-trial Agreement;
 • Exhibit 2: Plaintiff's Medical Records; Industrial Commission Forms; Plaintiff's Responses to Defendants' Discovery Requests; Incident Reports and Plaintiff's Recorded Statement; and
 • Exhibit 3: Industrial Commission Form 22
8. Plaintiff's issues for determination are as follows:
 a. Whether plaintiff suffered a compensable injury by accident on December 26, 2007 arising out of and within scope and course of employment with employer.
 b. What compensation benefits is employee entitled to receive?
 c. Whether plaintiff is entitled to payment of attorney fees pursuant to N.C. Gen. Stat. § 97-88-1. *Page 3 
9. Defendants' issues for determination are as follows:
 a. Did plaintiff sustain an injury by accident/specific traumatic incident of the work assigned on or about December 26, 2007?
 b. Is there a causal relationship between the alleged December 26, 2007 incident and any medical treatment offered plaintiff while employed with defendant-employer?
 c. If the plaintiff did sustain an injury on or about December 26, 2007, was there a material aggravation or exacerbation of his pre-existing back condition?
 d. What benefits, if any, is plaintiff entitled to pursuant to the Workers' Compensation Act?
 e. Whether plaintiff reached MMI, prior to December 26, 2007, following his basketball injury in September 2007.
 f. Whether Defendants' denial of the claim was unreasonable.
10. The following depositions were submitted before the Deputy Commissioner:
 a. Dr. Shankar C. Sanka
 b. Dr. Robert Lee Allen
 c. Dr. Lakshman Rao
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old. Plaintiff has an Associate's Degree in Business Administration and was in the Air Force from 1985 through 1992, where he served as a bookkeeper.
2. In April 2007, plaintiff commenced work for defendant-employer as an auditor, which required that he inspect pallets of groceries to make certain the orders for the stores were correct.
3. Plaintiff testified that on approximately August 2, 2007, he injured himself playing basketball in defendant-employer's parking lot after work. Plaintiff did not file a workers' compensation claim for this injury.
4. Plaintiff presented to his family doctor, Dr. Lakshman Rao, an internal medicine specialist at the Dunn-Erwin Medical Center, for pain in his left knee as well as for complaints of chronic low back pain and left leg radiation. On August 7, 2007, Dr. Rao ordered an MRI of plaintiff's lumbar spine, which revealed foraminal stenosis at the L2-3, L4-5 discs. As a result, Dr. Rao referred plaintiff to Dr. Robert Lee Allen, a neurosurgeon, in Raleigh for treatment of his back condition.
5. On August 16, 2007, plaintiff presented again to the offices of Dr. Rao with complaints of severe left lower back pain that radiated to his left lower extremity, with the pain being "24/7."
6. On September 12, 2007, plaintiff presented to Dr. Allen with complaints of left leg pain and reported an acute onset of pain as of August 2, 2007. Dr. Allen's notes indicate that plaintiff presented using crutches and reported he had been in the emergency room six times over the past six weeks due to his symptoms. Dr. Allen reviewed the MRI scan and noted that there appeared to be a far lateral disc at left L4-L5 contacting but not dramatically compressing the left *Page 5 
L4 nerve root, which he opined was consistent with a clinical left L4 radiculopathy. Dr. Allen recommended epidural steroid injections centered at L4-L5 in combination with physical therapy to alleviate some of plaintiff's left leg pain due to the radiculopathy.
7. At plaintiff's next visit on October 24, 2007, Dr. Allen opined that plaintiff had some improvement but "nothing dramatic." According to Dr. Allen's notes, plaintiff indicated that he was concerned about his left L4 radiculopathy and that he "cannot do his job at the Food Lion Warehouse." Nonetheless, Dr. Allen released plaintiff to return to work as of November 12, 2007. The return to work note did not include any work restrictions for plaintiff.
8. When plaintiff returned to work with defendant-employer on November 12, 2007 he was assigned to a "selector" position. Plaintiff testified that the selector walks up and down aisles and stacks the pallets and then brings them to the docks, where another worker loads them on the trucks for distribution to the stores. The position of selector requires standing, walking, bending, reaching, and lifting up to 50 pounds. Plaintiff testified that he had difficulty performing the selector duties and spoke with Christopher Wilson, a supervisor for defendant-employer, about transferring to a less strenuous position. In his testimony, Mr. Wilson confirmed that plaintiff expressed concern to him about whether he could perform the duties of the selector position due to his back problems. Plaintiff testified that he was instructed that he would have to wait approximately six months to bid for his former position of auditor or any other position.
9. In his recorded statement to defendant-carrier following his injury, plaintiff described his difficulty working as a selector as follows:
 I mentioned to them two weeks prior [to December 26, 2007] that I wanted to get into another job `cause my leg was throbbing, I think it was a nerve from my back, that sciatic nerve? And I told them I *Page 6 
was having a problem, um, selecting the groceries, you know what I'm saying?
10. On December 26, 2007, while performing the selector duties, plaintiff reached for a pallet and experienced a sharp pain from his hip down to his left ankle. In his recorded statement, plaintiff stated:
 And, then, then my back, just gave out, my leg gave out. I couldn't walk on the 26th. I couldn't walk, I couldn't m-, it was pain in my hip, my knee and my leg going down my left side. And I just couldn't walk. Excruciating pain.
Following the injury, a supervisor assisted plaintiff to the office to report the injury. Plaintiff was then transported to Betsy Johnson Regional Hospital in Dunn, North Carolina, where he complained of stabbing low back pain that radiated into his left foot, leaving him unable to walk. Steven R. Salisbury, a physician's assistant, released plaintiff to return to light duty work in three days.
11. On December 28, 2007, plaintiff presented to Cara McLamb, a physician's assistant for Dr. Shankar C. Sanka at Harnett Family Medicine. Plaintiff reported complaints of lumbar pain with left leg radiculopathy and indicated that he had injured his lower back while working for defendant-employer on December 26, 2007. Plaintiff complained of aching and burning pain and paresthesias in his left leg, making it very difficult for him to bear weight on his leg or walk without crutches. Plaintiff reported that he had had been having back pain prior to the accident, and that he had been diagnosed with a herniated disc by Dr. Allen in August 2007 and been treated with epidural steroid injections. Plaintiff was diagnosed with lumbar pain with left leg radiculopathy and was scheduled for an MRI of his lower spine. At that time, plaintiff was written out of work for an "undetermined" amount of time pending the MRI. *Page 7 
12. The MRI was performed on January 5, 2009 and revealed chronic bulging of the intervertebral discs at L2-3, L3-4 and L4-5, most pronounced at L3-4 with a borderline to mild acquired stenosis at this level. Facet joint arthrosis was present throughout.
13. On January 22, 2008, plaintiff again presented to Dr. Allen, who noted that plaintiff had continuing leg pain in the left anterior thigh suspicious of an L4 root problem. Dr. Allen recorded that plaintiff "had gone back to work but then had worsening. The pain has never resolved and it got a little bit worse on increasing his activity levels." Because the conservative management that Dr. Allen had provided since September 2007 had not provided relief, Dr. Allen recommended surgical removal of the herniated L4-5 disc, which was performed on June 19, 2008.
14. When comparing the MRIs before and after plaintiff's injury, Dr. Allen testified that the findings were basically the same. Dr. Allen stated that plaintiff's symptoms prior to the injury and after were consistent with a left L4 nerve root, left anterior thigh radiculopathy that had never resolved and was a "little bit worse on increasing his activity levels." Dr. Allen opined that plaintiff had always had clinical evidence of a left L4 radiculopathy at his presentations, including at the time of his initial visit on September 12, 2007. Dr. Allen also opined that his treatment of plaintiff after the December 26, 2007 injury, including the June 19, 2008 surgery, was a continuation of the same L4 nerve root problem that plaintiff had had prior to the work accident.
15. Dr. Allen testified to reasonable degree of medical certainty that plaintiff sustained an aggravation of his pre-existing lumbar problem on December 26, 2007, and that the June 19, 2008 surgery was causally related to that aggravation. However, Dr. Allen expressly *Page 8 
based that opinion on the hypothetical history presented to him by plaintiff's counsel. The hypothetical history included the following language:
 Assume also, if you will, that there are efficiency requirements at [defendant-employer], where employees are timed to ensure that they are taking and moving the appropriate number of items within a period of time; that [defendant-employer] requires the manager to train its employees on proper lifting techniques, and warns that position can cause back injury.
 Continue to assume that between November 12, 2007, and December 26, 2007, the date of injury, that [plaintiff] was able to perform the position of [selector] without difficulty, meeting all of [defendant-employer]'s lifting and efficiency requirements; that he was never written up or warned that he was unable to do the job.
16. The Full Commission finds, based on the greater weight of the evidence of record, that the hypothetical history presented to Dr. Allen did not accurately reflect plaintiff's actual condition prior to his December 26, 2007 injury. The hypothetical history given to Dr. Allen makes no reference whatsoever to plaintiff's complaints to Mr. Wilson prior to his injury that he was unable to perform his job as selector due to ongoing leg and lumbar pain. Furthermore, although Mr. Wilson testified that defendant-employer had efficiency requirements in place for employees working as selectors, Mr. Wilson explained that those efficiency requirements were not fully enforced until the employee had been in the position for 90 days, and were not enforced at all during the first four weeks of employment as a selector. At the time of his injury, plaintiff was in only his sixth week of employment as a selector and, according to his subsequent recorded statement to defendant-carrier, was performing only at a 50% production level at that time.
17. Because Dr. Allen's expert medical opinion relating the June 19, 2008 surgery to plaintiff's December 26, 2007 workplace injury was based on a hypothetical history that did not accurately represent plaintiff's actual physical condition and work performance prior to his *Page 9 
workplace injury, the Full Commission finds that Dr. Allen's opinion as to the extent of the aggravation of plaintiff's pre-existing back condition due to the December 26, 2007 workplace injury, and the relationship between that aggravation and the medical care Dr. Allen subsequently provided to plaintiff including the June 19, 2008 surgery, is unsupported by the evidence of record and therefore must be given little weight.
18. Dr. Sanka, an internal medicine specialist, testified as to plaintiff's medical condition. Dr. Sanka did not examine plaintiff on December 28, 2007, but he supervised the physician's assistant who did examine plaintiff, and who diagnosed plaintiff with lumbar pain with left leg radiculopathy at that time. Dr. Sanka testified that plaintiff reported that his back problems initially began in the summer of 2007, and in comparing the results of the two MRIs, Dr. Sanka opined that they looked "about the same." However, Dr. Sanka further opined that, while plaintiff may have had pre-existing chronic back pain, the symptoms with which plaintiff's presented on December 28, 2007 were an acute worsening of that pain secondary to the injury he had suffered at work on December 26, 2007. Dr. Sanka opined that plaintiff's symptoms on December 28, 2007 were consistent with an acute sprain of plaintiff's lower back and an acute muscular spasm.
19. Plaintiff was not seen by Dr. Sanka's office again until July 11, 2008, some time after the June 19, 2008 surgery by Dr. Allen, and Dr. Sanka never received Dr. Allen's medical records regarding that surgery to review. Nonetheless, when asked whether plaintiff's June 19, 2008 surgery was related to plaintiff's December 26, 2007 workplace injury, Dr. Sanka opined that plaintiff's "pre-existing condition was acutely worsened by the injury that [plaintiff] had at [defendant-employer], and the surgery was to fix something which was chronically wrong which acutely worsened because of the injury." *Page 10 
20. The Full Commission finds credible the opinion of Dr. Sanka concerning plaintiff's presentation on December 28, 2007. However, the Full Commission finds that Dr. Sanka has provided insufficient justification for his opinion relating plaintiff's condition on December 28, 2007 to the subsequent treatment by Dr. Allen leading to the June 19, 2008 surgery. The Full Commission accordingly finds that Dr. Sanka's opinion relating the December 26, 2007 aggravation of plaintiff's pre-existing lumbar condition to the June 19, 2008 surgery is unsupported speculation.
21. Dr. Rao, plaintiff's family physician, testified that he has treated plaintiff for chronic low back pain since before the work injury. When plaintiff presented to Dr. Rao on August 16, 2007, plaintiff complained of constant severe left lower back pain that radiated to his left lower extremity. When comparing plaintiff's lumbar complaints prior to and after the December 26, 2007 injury, Dr. Rao testified that plaintiff continued to experience the same pain for which he presented in August 2007.
22. After weighing the medical testimony and evidence of record, the Full Commission finds that on December 26, 2007 plaintiff experienced an aggravation of a pre-existing back condition. However, the Full Commission finds the medical evidence of record insufficient to support a finding that the medical care received by plaintiff from Dr. Allen following the December 26, 2007 injury, including plaintiff's June 19, 2008 surgery, was causally related to that aggravation.
23. Plaintiff has failed to show that any continuing disability following the January 5, 2008 MRI is related to the workplace injury on December 26, 2007.
24. Defendants' defense of this matter was not unreasonable or indicative of stubborn, unfounded litigiousness. *Page 11 
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 26, 2007, plaintiff experienced a specific traumatic incident arising out of and in the course of his employment with defendant-employer resulting in the aggravation of a pre-existing lumbar condition. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to have defendants pay for all medical expenses reasonably related to his compensable injury of December 26, 2007 that were incurred to lessen the period of disability, effect a cure, or give relief. However, plaintiff has failed to show that medical expenses incurred by plaintiff after January 5, 2008 are reasonably related to plaintiff's compensable injury. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Plaintiff was taken out of work due to his compensable injury of December 26, 2007 pending the MRI of January 5, 2008. Plaintiff is therefore entitled to disability compensation from December 26, 2007 through January 5, 2008, at a rate of $268.00 per week. Plaintiff has failed to show that any disability he may have suffered following January 5, 2008 is due to his compensable injury. N.C. Gen. Stat. §§ 97-2(9), 97-29.
4. Because defendants' defense of this claim was not unreasonable or indicative of stubborn, unfounded litigiousness, plaintiff is not entitled to have sanctions imposed upon defendants pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following: *Page 12 
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at a rate of $268.00 per week from December 26, 2007 through January 5, 2008. This compensation has already accrued and shall be paid to Plaintiff in a lump sum, pursuant to the attorneys' fee set out below.
2. Defendants shall pay for all medical expenses incurred by plaintiff as the result of the December 26, 2007 workplace injury. Defendants are not responsible for any medical expenses incurred by plaintiff following January 5, 2008.
3. Plaintiff's counsel is entitled to a 25% attorney fee to be deducted from the amount owed to plaintiff in Paragraph 1 of this Award.
4. Defendants shall pay the court costs.
This the 11th day of January, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ DANNY LEE McDONALD COMMISSIONER